**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CRAIG PIERCE, and NICOLE PIERCE, as parents, next friends and guardians of BRAYDEN PIERCE, a minor, <br><br> Plaintiff, <br><br> v. <br><br> WHITESIDE SCHOOL DISTRICT# 115 BOARD OF EDUCATION, <br><br> Defendant. <br><br> <u>Serve at:</u> <br> 111 Warrior Way <br> Belleville, Illinois 62221 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.:   22-1153

**<u>JURY TRIAL DEMANDED</u>**.

## <u>COMPLAINT</u>

COMES NOW Craig Pierce and Nicole Pierce, as parents, next friends and guardians of Plaintiff, Brayden Pierce, a minor, by and through their attorneys, Mathis, Marifian & Richter, Ltd., and for their Complaint against the Defendant, Whiteside School District# 115 Board of Education, state as follows:

## <u>NATURE OF THE ACTION</u>

1.      This is an action to correct unlawful disability discrimination by the board of education of an Illinois public school district, as well as by certain of its teachers and administrators, brought under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*., the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq*., and state law

2.      The Defendant, Whiteside School District# 115, is an Illinois public school district located in St Clair County, Illinois, consisting of two schools:  Whiteside Elementary School and Whiteside Middle School.

3.     Pursuant to applicable federal and state law, Defendant was required to develop and implement an Individualized Education Program ("IEP") for all eligible students with a disability in order to provide them with certain disability accommodations to ensure that every eligible child receives a "Free Appropriate Public Education" in the "Least Restrictive Environment."

4.     Plaintiff, Brayden Pierce ("Brayden" or "Plaintiff"), is a minor who was born with a profound hearing disability.  As an eligible student with a disability attending Whiteside Middle School ("WMS"), Brayden's IEP required, among other things, that all of his teachers use a Digital Modulation ("DM") system during all periods of in-person instruction that sends the teacher's voice to receivers attached to Brayden's cochlear implants.  Brayden's IEP also required his teachers to provide him with notes ahead of time for all classroom lectures.  The use of the DM system and the provision of notes were necessary in order to accommodate Brayden's disability and to permit him to follow classroom lectures and daily curriculum so that he may receive a "Free Appropriate Public Education" ("FAPE") in the "Least Restrictive Environment" ("LRE").

5.     Despite the requirements of the IEP, Defendant failed to properly instruct all of Brayden's teachers in the use of the DM system and to require that it be used during all periods of in-person instruction.  Notwithstanding repeated pleas by Brayden and fellow students that he use the DM system because of Brayden's disability, one of Defendant's teachers, Mr. Gray, refused to use the DM system.  Instead, Mr. Gray publicly humiliated and belittled Brayden before the entire class based on his disability, told Brayden and others words to the effect of "*I don't care that you're deaf,*" and sent Brayden to detention.  Thereafter, the Defendant failed to take appropriate action to investigate and remedy the unlawful discrimination, instead stating that this was a "*learning experience*" for Brayden.  In addition, the teachers at WMS repeatedly failed and/or

refused to provide Brayden with notes ahead of time for all classroom lectures as mandated by his IEP.

## PARTIES

6.      Plaintiff, Brayden Pierce, is a minor who, at all times relevant herein, was and is a citizen and resident of the City of Belleville, St. Clair County, Illinois.

7.      Craig Pierce and Nicole Pierce are the parents and legal guardians of Brayden and, at all times relevant herein, were and are citizens and residents of the City of Belleville, St. Clair County, Illinois.

8.      Defendant, Whiteside School District #115, was and is a body politic and a school district organized and operating under the laws of the State of Illinois, located in St. Clair County, Illinois.

9.      The Board of Education of Whiteside School District #115 ("Defendant" or "the Board") is charged with, and responsible for, the operation of public schools within the district, and at all times relevant herein, was acting in that capacity under the color of state law.

10.     The Board governs two public schools: Whiteside Middle School ("WMS") and Whiteside Elementary School ("WES"), both physically located in St. Clair County, Illinois.

11.     At all times relevant herein, the Board operated under the authority of the Illinois State Board of Education.

12.     Defendant is, and at all times relevant herein was, a program or activity receiving federal financial assistance within the meaning of Title VI, 42 U.S.C. § 2000d.

13.     WMS is a public middle school located at 111 Warrior Way, Belleville, Illinois, operating under the Board's authority.

## JURISDICTION AND VENUE

14.     Plaintiff brings this action to remedy violations of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq*., as well as state law claims for Intentional Infliction of Emotional Distress and Denial of a Free Appropriate Public Education.

15.     This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law.

16.     This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims share all common operative facts with his federal law claims, and the parties are identical. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

17.     Venue is proper in, and Defendant is subject to the personal jurisdiction of, this Court because Defendant maintains facilities and business operations in this District, and all or most of the events giving rise to this action occurred in this District. 28 U.S.C. § 1391(b); 42 U.S.C. § 2000e-5(f)(3).

## GENERAL ALLEGATIONS

18.     At all times relevant herein, Plaintiff, Brayden Pierce, was and is a minor who has been profoundly deaf in both ears since birth.

19.     Plaintiff's profound bilateral hearing loss negatively impacts his ability to participate in a general education setting.

20.     To aid him in his ability to hear, Plaintiff has bilateral cochlear implants.

21.    The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq*.,

requires public schools to develop an Individualized Education Program ("IEP") for every student

with a disability who is found to meet the federal and state requirements for special education.

22.    The IEP provides accommodations, modifications, related services, and specialized

academic instruction to ensure that every eligible child receives a "Free Appropriate Public

Education" (FAPE) in the "Least Restrictive Environment" (LRE).

23.    After an IEP is developed, the student's teachers are responsible for implementing

all educational services, program modifications, or supports as established and mandated by the

IEP.

24.    At all times relevant herein, Plaintiff met the requirements for special education

services and the implementation of an IEP.

25.    At all times relevant herein, an IEP has been in place for Plaintiff.

26.    During the 2020-2021 school year, Plaintiff was a student attending the eighth

grade at WMS.

27.    During the 2020-2021 school year, Plaintiff's IEP mandated that his teachers

provide him with notes prior to each class.

28.    Despite this requirement, many of Plaintiff's teachers continually failed to provide

him with class notes prior to each class.

29.    Plaintiff's parents brought this failure to the attention of the school at IEP meetings

and at other times.

30.    In a further attempt to address the teachers' failure to provide notes prior to each

class, Plaintiff's parents emailed their concerns to the teachers and to the IEP Special Education

Coordinator, Chris Stinnett, to which they responded that they would start providing the notes in accordance with the IEP.

31.    Even after Plaintiff's parents communicated their concerns to the school, the teachers continued to fail to provide the notes prior to each class as required by the IEP.

32.    On or about March 8, 2021, Plaintiff gave a PowerPoint presentation to certain teachers, explaining his educational needs, including his need for notes to be provided prior to class.

33.    Even after the March 8, 2021, presentation, the teachers continued to fail to provide class notes prior to each class session as required by the IEP.

34.    During the 2020-2021 school year, Plaintiff's IEP also mandated that his teachers use a Digital Modulation ("DM") system during all periods of in-person instruction.

35.    With the DM system, the teacher wears a microphone and transmitter that sends the teacher's voice to receivers attached to Plaintiff's cochlear implants.

36.    The DM system is designed to help overcome the negative effects of distance and competing noise by bringing the teacher's voice directly into Plaintiff's ear.

37.    During the March 8, 2021, PowerPoint presentation Plaintiff explained why he needed his teachers to use the DM system, and included a description of the DM system and an explanation on how to operate the equipment.

38.    Based on their reaction to the March 8, 2021, PowerPoint presentation, it was clear that many of Plaintiff's teachers did not understand how to use the DM system or why it was necessary to address Plaintiff's ability to learn.

39.    Based on their reaction to the March 8, 2021, PowerPoint presentation, it was clear that Defendant had failed to properly instruct all of Plaintiff's teachers in the use of the DM system.

40.     Despite the IEP requiring use of the DM system, Defendant failed to enforce its teachers' compliance with the IEP.

41.     On or about April 8, 2021, Plaintiff attended an in-person class being conducted by one of Defendant's teachers, Mr. Gray.

42.     Despite the IEP requiring use of the DM system during all periods of in-person instruction, Mr. Gray did not use the DM system.

43.     Mr. Gray was speaking quietly, and Plaintiff asked him several times to repeat what he was saying.

44.     As he had been instructed and encouraged to do, Plaintiff attempted to give Mr. Gray the DM system so that Plaintiff could hear what Mr. Gray was saying.

45.     Despite the IEP requiring use of the DM system and Plaintiff's request that he do so, Mr. Gray intentionally refused to use the DM system.

46.     Instead of using the DM system, Mr. Gray got close to Plaintiff's ear and began yelling at him.

47.     Several other students then spoke up in support of Plaintiff, pointing out to Mr. Gray that Plaintiff is deaf and that Mr. Gray needed to use the DM system in order to allow Plaintiff to hear what was being taught in class.

48.     Despite the IEP requiring use of the DM system and the repeated pleas of Plaintiff and his fellow classmates requesting that he use the DM system, Mr. Gray continued to refuse to use the DM system.

49.     As one of the students was explaining to Mr. Gray why he needed to use the DM system, Mr. Gray stated to Plaintiff words to the effect of: *"I don't care that you're deaf."*

50.     Mr. Gray then directed Plaintiff to work on his homework, to which Plaintiff responded that he had already completed his homework.

51.     Mr. Gray then picked up Plaintiff's textbook, opened it to a random page, and stated that Plaintiff's homework was not finished, to which Plaintiff responded that the page that Mr. Gray had opened to was not, in fact, Plaintiff's homework.

52.     Plaintiff then showed Mr. Gray his completed homework assignment.

53.     In an apparent effort to embarrass and humiliate Plaintiff in retaliation for requesting the use of the DM system required by Plaintiff's IEP, Mr. Gray continued to falsely insist that Plaintiff's homework was not completed.

54.     Mr. Gray became visibly angry at Plaintiff and walked away from him.

55.     Plaintiff tried desperately to listen to Mr. Gray and to follow his instructions but had difficulty doing so.

56.     Shortly thereafter, Mr. Gray returned to where Plaintiff was sitting and told him to read a book.

57.     In compliance, Plaintiff opened his Chromebook to look for a book to read.

58.     Mr. Gray then falsely accused Plaintiff of playing a game on his Chromebook.

59.     Plaintiff informed Mr. Gray that he was not playing a game, to which Mr. Gray responded by walking up to him in an aggressive manner, taking the DM system, and yelling into it: *"Go to the ALC!"*

60.     Plaintiff went to the Alternative Learning Classroom ("ALC"), where he told the ALC Supervisor, Mr. Little, what had happened.

61.     Mr. Little responded by telling Plaintiff that he had been sent to the ALC for not paying attention in class.

62.     Plaintiff was unable to pay attention in class because Mr. Gray refused to use the DM system as mandated by Plaintiff's IEP.

63.     Shortly thereafter, another student came into the ALC and similarly informed Mr. Little about what had happened between Plaintiff and Mr. Gray.

64.     Despite both Plaintiff and another student having informed Mr. Little of what had happened, Mr. Little did not release Plaintiff from the ALC and did not take any corrective action to address Mr. Gray's refusal to use the DM system mandated by Plaintiff's IEP.

65.     Later that day, during lunch period, two students from Plaintiff's class informed the school's Principal, Monica Laurent, about what had happened between Plaintiff and Mr. Gray.

66.     Plaintiff was then called to the principal's office, where he told the Principal and Assistant Principal about what had happened between him and Mr. Gray.

67.     Later that day, Plaintiff's mother, Nicole Pierce, contacted Plaintiff's Deaf and Hard of Hearing Teacher, Jennifer Engdale, to discuss what had happened between Plaintiff and Mr. Gray.

68.     Plaintiff's Deaf and Hard of Hearing Teacher, Jennifer Engdale, responded that the incident with Mr. Gray was a *"learning experience"* for Plaintiff.

69.     In a meeting that same day with Plaintiff, Jennifer Engdale told Plaintiff that Mr. Gray's conduct was something that is *"going to happen throughout your whole life."*

70.     Despite Plaintiff, his mother, and his fellow students all having voiced their concerns to Defendant's school faculty and administrators, Mr. Gray was not fired, but was instead allowed back to the school the following day.

71.     Upon information and belief, Mr. Gray continued working for the Defendant.

## COUNT I
## ADA: Discrimination (42 U.S.C. § 12132)

72.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 71 as if fully set forth herein.

73.     At all times relevant herein, Plaintiff, as a student enrolled at WMS, met the essential eligibility requirements for the receipt of Defendant's services or the participation in programs or activities provided by Defendant.

74.     Defendant, as a public school district operating under the authority of the Illinois State Board of Education, is a department, agency, special purpose district, or other instrumentality, of a State or local government.

75.     Plaintiff's bilateral hearing loss is a physical or mental impairment that substantially limits one or more major life activities including, but not limited to, Plaintiff's ability to hear, learn, concentrate, communicate, and work.

76.     At all times relevant herein, Plaintiff, by reason of his bilateral hearing loss, was and is a qualified individual with a disability under the Americans with Disabilities Act.

77.     The ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; see also 28 C.F.R. § 35.130.

78.     Plaintiff, as a qualified individual with a disability under the Americans with Disabilities Act, was discriminated against by Defendant, by and through one or more of its employees and/or agents, by excluding Plaintiff from participation in and/or denying Plaintiff the benefits of Defendant's services, programs, or activities in one or more of the following respects:

(a)   Defendant failed to properly and adequately inform, instruct and/or train its personnel in the requirements of Plaintiff's IEP.

(b)   Defendant failed to provide Plaintiff with class notes prior to each class session;

(c)   Defendant failed to properly and adequately inform, instruct and/or train its personnel in the use of Plaintiff's DM system.

(d)   Defendant, by and through its employee(s) and agent(s), intentionally refused to use Plaintiff's DM system after being informed of Plaintiff's disability and the need to use the DM system.

(e)   Defendant, by and through its employee(s) and agent(s), intentionally retaliated against Plaintiff after being informed of Plaintiff's disability and the need to use the DM system.

(f)   Defendant, by and through its employee(s) and agent(s), intentionally humiliated and belittled Plaintiff before the entire class based on his disability after being informed of Plaintiff's disability and the need to use the DM system.

(g)   Defendant, by and through its employee(s) and agent(s), yelled at Plaintiff before the entire class based on his disability.

(h)   Defendant, by and through its employee(s) and agent(s), stated to Plaintiff: *"I don't care that you're deaf"* after being informed of Plaintiff's disability and the need to use the DM system.

(i)   Defendant, by and through its employee(s) and agent(s), falsely accused Plaintiff before the entire class based on his disability.

(j)   Defendant, by and through its employee(s) and agent(s), disciplined Plaintiff by sending him to the ALC during class because of his disability.

(k)     Defendant, by and through its employee(s) and agent(s), retaliated against Plaintiff for requesting compliance with his IEP by sending him to the ALC during class.

(l)     Defendant failed to take appropriate and/or sufficient action to investigate, correct and remedy the disability discrimination.

(m)    Defendant failed to take appropriate and/or sufficient action to investigate, correct and remedy the retaliation against Plaintiff for requesting compliance with his IEP.

(n)     Defendant, by and through its employee(s) and agent(s), further discriminated against Plaintiff by ratifying and affirming the conduct of Mr. Gray by stating that the discriminatory conduct of its employee(s) and agent(s) was a "*learning experience*" for Plaintiff.

(o)     Defendant, by and through its employee(s) and agent(s), further discriminated against Plaintiff by ratifying and affirming the conduct of Mr. Gray by stating that the discriminatory conduct of its employee(s) and agent(s) was something that is *"going to happen throughout your whole life."*

(p)     Defendant committed other acts and omissions in violation of Plaintiff's IEP and his rights under the Americans with Disabilities Act.

79.    Plaintiff was discriminated against because of his disability.

80.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, from damages including, but not limited to, being excluded from participation in and/or being denied the benefits of the services, programs, or activities of a public entity, being subjected to discrimination by a public entity, being deprived of access to educational benefits, severe humiliation, embarrassment, degradation, mental anguish, and emotional and physical distress.

WHEREFORE Plaintiff, Brayden Pierce, by and through his parents and next friends, respectfully request that this Court enter Judgment on Count I against Defendant, Whiteside School District# 115 Board of Education, and for relief in accordance therewith, including but not limited to, the following:

(a)    Compensatory damages;
(b)    Prejudgment interest;
(c)    Attorneys' fees and costs; and
(d)    All other relief that the Court deems just and proper.

## COUNT II
### ADA: Retaliation (42 U.S.C. § 12203(a))

81.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 80 as if fully set forth herein.

82.    Defendant, by and through its employees and/or agents, engaged in an act or practice made unlawful by Chapter 126 of Title 42 of the United States Code by excluding Plaintiff from participation in or denying Plaintiff the benefits of the school's services, programs, or activities, or by otherwise discriminating against Plaintiff by reason of his disability.

83.    Plaintiff and/or his parents opposed this unlawful practice when they attempted to secure Plaintiff's rights to receive the benefits of Defendant's services, programs, or activities by repeatedly requesting that Plaintiff's teachers use the DM system and provide Plaintiff with notes prior to each class period after his teachers failed to do so.

84.    Plaintiff also opposed this unlawful practice when he attempted to secure his rights to receive the benefits of Defendant's services, programs, or activities by informing Defendant that he was unable to hear the teacher due to his bilateral hearing loss and requesting that the teacher use the DM system.

85.   Plaintiff again opposed Defendant's unlawful practices when he reported the incident between him and Mr. Gray to the ALC Supervisor, Mr. Little, the school's Principal, Monica Laurent, the Assistant Principal and others.

86.   The ADA mandates that "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203.

87.   Defendant, by and through one or more of its employees and/or agents, retaliated against Plaintiff for opposing the Defendant's unlawful practices in one or more of the following respects:

(a)   Defendant, by and through its employee(s) and agent(s), refused to provide Plaintiff with notes prior to each class after being informed of Plaintiff's disability, his need for notes to be provided, and his need to use the DM system.

(b)   Defendant, by and through its employee(s) and agent(s), intentionally refused to use Plaintiff's DM system after being informed of Plaintiff's disability and his need to use the DM system.

(c)   Defendant, by and through its employee(s) and agent(s), humiliated and belittled Plaintiff before the entire class after being informed of Plaintiff's disability and his need to use the DM system.

(d)   Defendant, by and through its employee(s) and agent(s), intentionally retaliated against Plaintiff after being informed of Plaintiff's disability and his need to use the DM system.

(e)    Defendant, by and through its employee(s) and agent(s), intentionally humiliated and belittled Plaintiff before the entire class after being informed of Plaintiff's disability and his need to use the DM system.

(f)    Defendant, by and through its employee(s) and agent(s), yelled at Plaintiff before the entire class after being informed of Plaintiff's disability and his need to use the DM system.

(g)    Defendant, by and through its employee(s) and agent(s), stated to Plaintiff: *"I don't care that you're deaf"* after being informed of Plaintiff's disability and his need to use the DM system.

(h)    Defendant, by and through its employee(s) and agent(s), falsely accused Plaintiff before the entire class after being informed of Plaintiff's disability and his need to use the DM system.

(i)    Defendant, by and through its employee(s) and agent(s), disciplined Plaintiff by sending him to the ALC during class after being informed of Plaintiff's disability and his need to use the DM system.

(j)    Defendant, by and through its employee(s) and agent(s), continued to detain Plaintiff in the ALC despite Plaintiff's report of discrimination and retaliation by Mr. Gray, and despite the fact that this report was corroborated by one or more fellow students.

(k)    Defendant failed to take appropriate and/or sufficient action to investigate, correct, and remedy the retaliation.

(l)      Defendant, by and through its employee(s) and agent(s), ratified and affirmed the conduct of Mr. Gray by stating that the discriminatory conduct of its employee(s) and agent(s) was a "*learning experience*" for Plaintiff.

(m)     Defendant, by and through its employee(s) and agent(s), ratified and affirmed the conduct of Mr. Gray by stating that the discriminatory conduct of its employee(s) and agent(s) was something that is *"going to happen throughout your whole life."*

(n)      Defendant committed other acts and omissions of retaliation in violation of Plaintiff's IEP and his rights under the Americans with Disabilities Act.

88.     Defendant retaliated against Plaintiff because of his disability and his assertion of his rights.

89.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, from damages including, but not limited to, being excluded from participation in and/or being denied the benefits of the services, programs, or activities of a public entity, being subjected to discrimination by a public entity, being retaliated against for having opposed an act made unlawful by Chapter 126 of Title 42 of the United States Code, being deprived of access to educational benefits, severe humiliation, embarrassment, degradation, mental anguish, and emotional and physical distress.

WHEREFORE Plaintiff, Brayden Pierce, by and through his parents and next friends, respectfully request that this Court enter Judgment on Count II against Defendant, Whiteside School District# 115 Board of Education, and for relief in accordance therewith, including but not limited to, the following:

(a)      Compensatory damage;
(b)      Prejudgment interest;
(c)      Attorneys' fees and costs; and
(d)      All other relief that the Court deems just and proper.

<u>**COUNT III**</u>
**ADA: Interference, Coercion, or Intimidation (42 U.S.C. § 12203(b))**

90.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 71 as if fully set forth herein.

91.     Pursuant to Chapter 126 of Title 42 of the United States Code, Plaintiff has the right to participate in or enjoy the benefits of Defendant's services, programs, or activities, and Plaintiff has the further right to be free from discrimination by Defendant.

92.     The ADA states that "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."  42 U.S.C. §12203(b).

93.     Defendant, by and through its employee(s) and/or agent(s), coerced, intimidated, threatened, or interfered with Plaintiff in the exercise or enjoyment of Plaintiff's rights granted or protected by Chapter 126 of Title 42 of the United States Code in one or more of the following respects:

(a)     Defendant, by and through its employee(s) and agent(s), refused to provide Plaintiff with notes prior to each class after being informed of Plaintiff's disability, his need for notes to be provided, and his need to use the DM system.

(b)     Defendant, by and through its employee(s) and agent(s), intentionally refused to use Plaintiff's DM system after being informed of Plaintiff's disability and his need to use the DM system.

(c)     Defendant, by and through its employee(s) and agent(s), humiliated and belittled Plaintiff before the entire class after being informed of Plaintiff's disability and his need to use the DM system.

(d)     Defendant, by and through its employee(s) and agent(s), intentionally coerced, intimidated, threatened, or interfered with Plaintiff in the exercise or enjoyment of Plaintiff's rights after being informed of Plaintiff's disability and his need to use the DM system.

(e)     Defendant, by and through its employee(s) and agent(s), intentionally humiliated and belittled Plaintiff before the entire class after being informed of Plaintiff's disability and his need to use the DM system.

(f)     Defendant, by and through its employee(s) and agent(s), yelled at Plaintiff before the entire class after being informed of Plaintiff's disability and his need to use the DM system.

(g)     Defendant, by and through its employee(s) and agent(s), stated to Plaintiff: *"I don't care that you're deaf"* after being informed of Plaintiff's disability and his need to use the DM system.

(h)     Defendant, by and through its employee(s) and agent(s), falsely accused Plaintiff before the entire class after being informed of Plaintiff's disability and his need to use the DM system.

(i)     Defendant, by and through its employee(s) and agent(s), disciplined Plaintiff by sending him to the ALC during class after being informed of Plaintiff's disability and his need to use the DM system.

(j)     Defendant, by and through its employee(s) and agent(s), continued to detain Plaintiff in the ALC despite Plaintiff's report of the interference, coercion and/or intimidation by Mr. Gray, and despite the fact that this report was corroborated by one or more fellow students.

(k)   Defendant failed to take appropriate and/or sufficient action to investigate, correct, and remedy the interference, coercion and/or intimidation by Mr. Gray.

(l)   Defendant, by and through its employee(s) and agent(s), ratified and affirmed the interference, coercion and/or intimidation by Mr. Gray by stating that the discriminatory conduct of its employee(s) and agent(s) was a "*learning experience*" for Plaintiff.

(m)   Defendant, by and through its employee(s) and agent(s), ratified and affirmed the interference, coercion and/or intimidation by Mr. Gray by stating that the discriminatory conduct of its employee(s) and agent(s) was something that is "*going to happen throughout your whole life.*"

(n)   Defendant committed other acts and omissions of coercion, intimidation, threats, and/or interference with Plaintiff in the exercise or enjoyment of Plaintiff's rights granted or protected by Chapter 126 of Title 42 of the United States Code in violation of Plaintiff's IEP and his rights under the Americans with Disabilities Act

94.   Defendant coerced, intimidated, threatened, or interfered with Plaintiff in the exercise or enjoyment of Plaintiff's rights granted or protected by Chapter 126 of Title 42 of the United States Code because of his disability.

95.   As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, from damages including, but not limited to, being excluded from participation in and/or being denied the benefits of the services, programs, or activities of a public entity, being subjected to coercion, intimidation, threats, and/or interference with Plaintiff in the exercise or enjoyment of Plaintiff's rights granted or protected by Chapter 126 of Title 42 of the United States Code by a public entity, being deprived of access to educational benefits,

severe humiliation, embarrassment, degradation, mental anguish, and emotional and physical distress.

WHEREFORE Plaintiff, Brayden Pierce, by and through his parents and next friends, respectfully request that this Court enter Judgment on Count III against Defendant, Whiteside School District# 115 Board of Education, and for relief in accordance therewith, including but not limited to, the following:

(a)     Compensatory damage;
(b)     Prejudgment interest;
(c)     Attorneys' fees and costs; and
(d)     All other relief that the Court deems just and proper.

## COUNT IV
### Rehabilitation Act: Discrimination (29 U.S.C. § 794)

96.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 71 as if fully set forth herein.

97.     Plaintiff's bilateral hearing loss is a physical or mental impairment that substantially limits one or more major live activities.

98.     At all times relevant herein Plaintiff, as a student enrolled at WMS, was and is otherwise qualified for the receipt of Defendant's services or the participation in programs or activities provided by Defendant.

99.     At all times relevant herein, either the Defendant, WMS, the Illinois State Board of Education, or any combination thereof, received federal financial assistance.

100.    The Rehabilitation Act mandates, in relevant part, that "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal

financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. §794(a).

101.    Plaintiff was excluded from participation in, denied the benefits of, or subject to discrimination solely by reason of his disability by Defendant in one or more of the following respects:

(a)    Defendant failed to properly and adequately inform, instruct and/or train its personnel in the requirements of Plaintiff's IEP.

(b)    Defendant failed to provide Plaintiff with class notes prior to each class session.

(c)    Defendant failed to properly and adequately inform, instruct and/or train its personnel in the use of Plaintiff's DM system.

(d)    Defendant, by and through its employee(s) and agent(s), intentionally refused to use Plaintiff's DM system after being informed of Plaintiff's disability and the need to use the DM system.

(e)    Defendant, by and through its employee(s) and agent(s), intentionally retaliated against Plaintiff after being informed of Plaintiff's disability and the need to use the DM system.

(f)    Defendant, by and through its employee(s) and agent(s), intentionally humiliated and belittled Plaintiff before the entire class after being informed of Plaintiff's disability and the need to use the DM system.

(g)    Defendant, by and through its employee(s) and agent(s), yelled at Plaintiff before the entire class after being informed of Plaintiff's disability and the need to use the DM system.

(h)    Defendant, by and through its employee(s) and agent(s), stated to Plaintiff: *"I don't care that you're deaf"* after being informed of Plaintiff's disability and the need to use the DM system.

(i)    Defendant, by and through its employee(s) and agent(s), falsely accused Plaintiff before the entire class after being informed of Plaintiff's disability and the need to use the DM system.

(j)    Defendant, by and through its employee(s) and agent(s), disciplined Plaintiff by sending him to the ALC during class after being informed of Plaintiff's disability and the need to use the DM system.

(k)    Defendant failed to take appropriate and/or sufficient action to investigate, correct and remedy the discrimination.

(l)    Defendant, by and through its employee(s) and agent(s), told Plaintiff that the discriminatory conduct of its employee(s) and agent(s) was a "*learning experience*" for Plaintiff.

(m)    Defendant, by and through its employee(s) and agent(s), told Plaintiff that the discriminatory conduct of its employee(s) and agent(s) was something that is *"going to happen throughout your whole life."*

(n)    Defendant committed other acts and omissions in violation of Plaintiff's IEP and his rights under the Rehabilitation Act.

102.    Plaintiff was discriminated against because of his disability.

103.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, from damages including, but not limited to, being excluded from participation in and/or being denied the benefits of the services, programs, or activities of a

public entity, being subjected to discrimination by a public entity, being deprived of access to educational benefits, severe humiliation, embarrassment, degradation, mental anguish, and emotional and physical distress.

WHEREFORE Plaintiff, Brayden Pierce, by and through his parents and next friends, respectfully request that this Court enter Judgment on Count IV against Defendant, Whiteside School District# 115 Board of Education, and for relief in accordance therewith, including but not limited to, the following:

(a)     Compensatory damage;
(b)     Prejudgment interest;
(c)     Attorneys' fees and costs; and
(d)     All other relief that the Court deems just and proper.

## COUNT V
### Rehabilitation Act: Retaliation (29 U.S.C. § 794; 28 C.F.R. § 42.503(b)(1)(vii))

104.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 71 as if fully set forth herein.

105.    Plaintiff's bilateral hearing loss is a physical or mental impairment that substantially limits one or more major life activities.

106.    At all times relevant herein Plaintiff, as a student enrolled at WMS, was and is otherwise qualified for the receipt of Defendant's services or the participation in programs or activities provided by Defendant.

107.    At all times relevant herein, either the Defendant, WMS, the Illinois State Board of Education, or any combination thereof, was a recipient of federal financial assistance.

108.    Defendant, by and through its employees and/or agents, engaged in an act or practice made unlawful by Section 504 of the Rehabilitation Act by excluding Plaintiff from

participation in or denying Plaintiff the benefits of the school's services, programs, or activities, or by otherwise discriminating against Plaintiff by reason of his disability.

109.    Plaintiff and/or his parents opposed this unlawful practice when they attempted to secure Plaintiff's rights to receive the benefits of Defendant's services, programs, or activities by repeatedly requesting that Plaintiff's teachers use the DM system and provide Plaintiff with notes prior to each class period after his teachers had continuously failed to do so

110.    Plaintiff also opposed this unlawful practice when he attempted to secure his rights to receive the benefits of Defendant's services, programs, or activities by informing Defendant that he was unable to hear the teacher due to his bilateral hearing loss and requesting that the teacher use the DM system.

111.    Plaintiff again opposed Defendant's unlawful practices when he and his parents reported the incident between him and Mr. Gray to the ALC Supervisor, the Principal, the Assistant Principal, and others.

112.    28 C.F.R. § 42.503(b)(1)(vii) mandates, in relevant part, as follows:

"A recipient may not discriminate on the basis of handicap in the following ways directly or through contractual, licensing, or other arrangements under any program or activity receiving Federal financial assistance:

> (vii) Intimidate or retaliate against any individual, whether handicapped or not, for the purpose of interfering with any right secured by section 504 or this subpart.

113.    Defendant, by and through one or more of its employees and/or agents, intimidated and/or retaliated against Plaintiff for opposing the Defendant's unlawful practices in one or more of the following respects:

(a)    Defendant, by and through its employee(s) and agent(s), refused to provide Plaintiff with notes prior to each class after being informed of Plaintiff's disability, his need for notes to be provided, and his need to use the DM system.

(b)     Defendant, by and through its employee(s) and agent(s), intentionally refused to use Plaintiff's DM system after being informed of Plaintiff's disability, his need for notes to be provided, and his need to use the DM system.

(c)     Defendant, by and through its employee(s) and agent(s), humiliated and belittled Plaintiff before the entire class after being informed of Plaintiff's disability and his need to use the DM system.

(d)     Defendant, by and through its employee(s) and agent(s), intentionally retaliated against Plaintiff after being informed of Plaintiff's disability and his need to use the DM system.

(e)     Defendant, by and through its employee(s) and agent(s), intentionally humiliated and belittled Plaintiff before the entire class after being informed of Plaintiff's disability and his need to use the DM system.

(f)     Defendant, by and through its employee(s) and agent(s), yelled at Plaintiff before the entire class after being informed of Plaintiff's disability and his need to use the DM system.

(g)     Defendant, by and through its employee(s) and agent(s), stated to Plaintiff: *"I don't care that you're deaf"* after being informed of Plaintiff's disability and his need to use the DM system.

(h)     Defendant, by and through its employee(s) and agent(s), falsely accused Plaintiff before the entire class after being informed of Plaintiff's disability and his need to use the DM system.

(i)     Defendant, by and through its employee(s) and agent(s), disciplined Plaintiff by sending him to the ALC during class after being informed of Plaintiff's disability and his need to use the DM system.

(j)     Defendant, by and through its employee(s) and agent(s), continued to detain Plaintiff in the ALC despite Plaintiff's report of intimidation and retaliation by Mr. Gray, and despite the fact that this report was corroborated by one or more fellow students.

(k)     Defendant failed to take appropriate and/or sufficient action to investigate, correct, and remedy the intimidation and retaliation.

(l)     Defendant, by and through its employee(s) and agent(s), told Plaintiff that the intimidation and retaliation by its employee(s) and agent(s) was a "*learning experience*" for Plaintiff.

(m)    Defendant, by and through its employee(s) and agent(s), told Plaintiff that the intimidation and retaliation by its employee(s) and agent(s) was something that is "*going to happen throughout your whole life.*"

(n)     Defendant committed other acts and omissions of intimidation and retaliation in violation of Plaintiff's IEP and his rights under the Rehabilitation Act.

114.    Defendant intimidated and retaliated against Plaintiff because of his disability.

115.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, from damages including, but not limited to, being excluded from participation in and/or being denied the benefits of the services, programs, or activities of a public entity, being subjected to discrimination by a public entity, being retaliated against for having opposed an act made unlawful by Section 504 of the Rehabilitation Act, being deprived of

access to educational benefits, severe humiliation, embarrassment, degradation, mental anguish, and emotional and physical distress.

WHEREFORE Plaintiff, Brayden Pierce, by and through his parents and next friends, respectfully request that this Court enter Judgment on Count V against Defendant, Whiteside School District# 115 Board of Education, and for relief in accordance therewith, including but not limited to, the following:

(a)      Compensatory damage;
(b)      Prejudgment interest;
(c)      Attorneys' fees and costs; and
(d)      All other relief that the Court deems just and proper.

## COUNT VI
### Intentional Infliction of Emotional Distress

116.      Plaintiff realleges and incorporates herein by reference paragraphs 1 through 71 as if fully set forth herein.

117.      Defendant, by and through one or more of its employees and/or agents, engaged in extreme and outrageous conduct in one or more of the following respects:

(a)      Defendant, by and through its employee(s) and agent(s), intentionally refused to use Plaintiff's DM system after being informed of Plaintiff's disability and his need to use the DM system.

(b)      Defendant, by and through its employee(s) and agent(s), intentionally retaliated against Plaintiff after being informed of Plaintiff's disability and his need to use the DM system.

(c)      Defendant, by and through its employee(s) and agent(s), intentionally humiliated and belittled Plaintiff before the entire class after being informed of Plaintiff's disability and his need to use the DM system.

(d)     Defendant, by and through its employee(s) and agent(s), yelled at Plaintiff before the entire class after being informed of Plaintiff's disability and his need to use the DM system.

(e)     Defendant, by and through its employee(s) and agent(s), stated to Plaintiff: *"I don't care that you're deaf"* after being informed of Plaintiff's disability and his need to use the DM system.

(f)     Defendant, by and through its employee(s) and agent(s), falsely accused Plaintiff before the entire class after being informed of Plaintiff's disability and his need to use the DM system.

(g)     Defendant, by and through its employee(s) and agent(s), used the DM system to yell directly into Plaintiff's ear *"Go to the ALC!"*

(h)     Defendant, by and through its employee(s) and agent(s), disciplined Plaintiff by sending him to the ALC during class after being informed of Plaintiff's disability and his need to use the DM system.

(i)     Defendant, by and through its employee(s) and agent(s), continued to detain Plaintiff in the ALC despite Plaintiff's report of intimidation and retaliation by Mr. Gray, and despite the fact that this report was corroborated by one or more fellow students.

(j)     Defendant failed to take appropriate and/or sufficient action to investigate, correct, and remedy the extreme and outrageous conduct.

(k)     Defendant, by and through its employee(s) and agent(s), told Plaintiff that the intimidation and retaliation by its employee(s) and agent(s) was a "*learning experience*" for Plaintiff.

(l)     Defendant, by and through its employee(s) and agent(s), told Plaintiff that the intimidation and retaliation by its employee(s) and agent(s) was something that is *"going to happen throughout your whole life."*

118.    The above-mentioned conduct, which included humiliating, embarrassing and angrily yelling directly into the ear of a hearing-impaired student, can be reasonably expected to cause severe emotional distress.

119.    Defendant and/or its employee(s) and agent(s) knew that there was a high probability that the above-mentioned conduct would cause Plaintiff emotional distress.

120.    As a result of the above-mentioned conduct, Plaintiff has in fact suffered emotional distress.

121.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, from damages including, but not limited to, humiliation, embarrassment, degradation, mental anguish, and emotional and physical distress.

WHEREFORE Plaintiff, Brayden Pierce, by and through his parents and next friends, respectfully request that this Court enter Judgment on Count VI against Defendant, Whiteside School District# 115 Board of Education, and for relief in accordance therewith, including but not limited to, the following:

(a)     Compensatory damages;
(b)     Prejudgment interest;
(c)     All other relief that the Court deems just and proper.

## COUNT VII
### Denial of a Free Appropriate Public Education (23 Ill. Admin. Code § 226.50)

122.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 71 as if fully set forth herein.

123.    23 Ill. Admin. Code § 226.50 mandates that a FAPE as defined in 34 C.F.R. § 300.17 must be made available by school districts to children with disabilities in accordance with 34 C.F.R. §§ 300.101-300.103.

124.    Plaintiff's bilateral hearing loss qualifies him as a "child with a disability" within the meaning of 34 C.F.R. § 300.8.

125.    Defendant, by and through one or more of its employees and/or agents, denied Plaintiff a FAPE (as defined in 34 C.F.R. § 300.17) by refusing or otherwise failing to provide special education and related services to Plaintiff in conformity with Plaintiff's IEP in one or more of the following respects:

(a)     Defendant, by and through its employee(s) and agent(s), refused to provide Plaintiff with notes prior to each class after being informed of Plaintiff's disability, his need for notes to be provided, and his need to use the DM system.

(b)     Defendant, by and through its employee(s) and agent(s), intentionally refused to use Plaintiff's DM system after being informed of Plaintiff's disability, his need for notes to be provided, and his need to use the DM system.

(c)     Defendant, by and through its employee(s) and agent(s), humiliated and belittled Plaintiff before the entire class after being informed of Plaintiff's disability and his need to use the DM system.

(d)     Defendant, by and through its employee(s) and agent(s), intentionally retaliated against Plaintiff after being informed of Plaintiff's disability and his need to use the DM system.

(e)     Defendant, by and through its employee(s) and agent(s), intentionally humiliated and belittled Plaintiff before the entire class after being informed of Plaintiff's disability and his need to use the DM system.

(f)     Defendant, by and through its employee(s) and agent(s), yelled at Plaintiff before the entire class after being informed of Plaintiff's disability and his need to use the DM system.

(g)     Defendant, by and through its employee(s) and agent(s), stated to Plaintiff: *"I don't care that you're deaf"* after being informed of Plaintiff's disability and his need to use the DM system.

(h)     Defendant, by and through its employee(s) and agent(s), falsely accused Plaintiff before the entire class after being informed of Plaintiff's disability and his need to use the DM system.

(i)     Defendant, by and through its employee(s) and agent(s), disciplined Plaintiff by sending him to the ALC during class after being informed of Plaintiff's disability and his need to use the DM system.

(j)     Defendant, by and through its employee(s) and agent(s), continued to detain Plaintiff in the ALC despite Plaintiff's report of intimidation and retaliation by Mr. Gray, and despite the fact that this report was corroborated by one or more fellow students.

(k)     Defendant failed to take appropriate and/or sufficient action to investigate, correct, and remedy the intimidation and retaliation.

(l)     Defendant, by and through its employee(s) and agent(s), told Plaintiff that the intimidation and retaliation by its employee(s) and agent(s) was a "*learning experience*" for Plaintiff.

(m)     Defendant, by and through its employee(s) and agent(s), told Plaintiff that the intimidation and retaliation by its employee(s) and agent(s) was something that is "*going to happen throughout your whole life.*"

(n)     Defendant committed other acts and omissions of intimidation and retaliation in violation of Plaintiff's IEP and his rights under the Illinois School Code, the State Board of Education regulations, and other applicable laws.

126.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, from damages including, but not limited to, being deprived of a FAPE, being excluded from participation in and/or being denied the benefits of the services, programs, or activities of a public entity, being subjected to discrimination by a public entity, being retaliated against for having opposed the District's unlawful acts, being deprived of access to educational benefits, severe humiliation, embarrassment, degradation, mental anguish, and emotional and physical distress.

WHEREFORE Plaintiff, Brayden Pierce, by and through his parents and next friends, respectfully request that this Court enter Judgment on Count VI against Defendant, Whiteside School District# 115 Board of Education, and for relief in accordance therewith, including but not limited to, the following:

(a)     Compensatory damage;
(b)     Prejudgment interest;
(c)     Attorneys' fees and costs; and
(d)     All other relief that the Court deems just and proper.

Respectfully submitted,

MATHIS, MARIFIAN & RICHTER, LTD.

By: _____
Mark S. Schuver, #6197656
23 Public Square, Suite 300
Belleville, Illinois 62220
Phone: (618) 234-9800
Fax: (618) 234-9786
mschuver@mmrltd.com

*Attorneys for Plaintiff.*