IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CRAIG PIERCE AND NICOLE PIERCE       )
AS PARENTS, NEXT FRIENDS AND          )
GUARDIANS OF B.P.                     )
                                      )
      Plaintiffs,                 )
                                      )
vs.                                   )   Case No.  22-cv-1153-JPG
                                      )
WHITESIDE SCHOOL DISTRICT NO. 115     )
BOARD OF EDUCATION,                   )
                                      )
      Defendant.                  )

**<u>MEMORANDUM AND ORDER</u>**

This matter comes before the Court on Defendant Whiteside School District No. 115 Board of Education ("District" or "Defendant") Motion to Dismiss Plaintiffs Craig Pierce and Nicole Pierce as Parents, Next Friends, and Guardians of B.P.[1] ("Plaintiffs") Complaint (Doc. 16). Plaintiffs oppose the motion (Doc. 18). Defendant cites exceptional circumstances and filed a reply (Doc. 19).

**I.      Background**

B.P. is a formerly enrolled student at Whiteside Middle School ("WMS"), which is a school operated by Defendant in St. Clair County, Illinois. B.P. is a minor who was born with a "profound hearing disability" and therefore, Defendant was mandated to develop and implement an Individualized Education Program ("IEP") to accommodate B.P.'s disability. (Doc. 1, Compl. at ¶ 3). Specifically, the Individuals with Disabilities Education Act ("IDEA") requires public schools to develop the IEP for every disabled student who meets the requirements for a special education. *Id.* at ¶ 21. B.P.'s IEP required his teachers use a Digital Modulation ("DM") during in-person

---

[1] Local Rule 5.1(d) states that if the involvement of a minor child must be mentioned, only the initials of that child should be used. The Court therefore will only use the initials of B.P.

instruction, which sends teacher's voice to receivers attached to B.P.'s cochlear implants. *Id*. at ¶ 4. Additionally, B.P.'s IEP also required his teachers provide him with notes ahead of time for classroom lectures, all of which were necessary for B.P. to receive a "Free Appropriate Public Education ("FAPE") in the "Least Restrictive Environment" ("LRE"). *Id*.

Plaintiffs allege that, despite the requirements of the IEP, Defendant failed to properly instruct B.P.'s teachers of the DM system, despite "repeated pleas" by B.P. and fellow students. Specifically, Defendant states one teacher Mr. Gray humiliated B.P. in front of the class and stated, "*I don't care that you're deaf*." *Id*. at ¶ 5. Defendant did not properly investigate and called this a "*learning experience*" for B.P. Defendant also told B.P. that behavior such as Mr. Gray's was something that is "going to happen throughout your whole life." *Id*. Mr. Gray was not fired and kept his job.

Craig Peirce and Nicole Pierce are parents and legal guardians of B.P. and bring suit on behalf of their son B.P. in seven separate counts: (1) Americans with Disabilities Act ("ADA") Discrimination under 42 U.S.C. § 12132; (2) ADA Retaliation under 42 U.S.C. § 12203(a); (3) ADA Interference, Coercion, or Intimidation under (42 U.S.C. § 12203(b); (4) Discrimination under Rehabilitation Act ("Section 504") under 29 U.S.C. § 794; (5) Retaliation under Section 504 under 29 U.S.C. § 794 and 28 C.F.R. § 42.503(b)(1)(vii); (6)  Intentional Infliction of Emotional Distress ("IIED"); and (7) Denial of FAPE  under 23 Ill. Admin. Code § 226.50.

Plaintiffs filed suit on June 3, 2022. Defendant now moves to dismiss Plaintiff's Complaint for failure to exhaust administrative remedies under IDEA. Specifically, Defendants state that although "Plaintiffs have raised violations of the ADA, Section 504 [Section 504 of the Rehabilitation Act] and IIED, these are all ancillary claims and Plaintiffs' claims are primarily denial of FAPE claims under IDEA[,]" which require Plaintiffs "exhaust administrative remedies

to establish this Court's jurisdiction." (Doc. 16 at 2). Defendants state Plaintiffs have failed to plead facts to establish any exhaustion of administrative remedies under IDEA.

## II.     Analysis

A motion to dismiss under Rule 8 is brought to raise issues with a plaintiff's failure to comply with general rules of pleading. See Fed. R. Civ. P. 8. Pursuant to Rule 8, a plaintiff must include (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the  relief sought, which may include relief in the alternative or different types of relief. Here, Defendant argues that this court does not have jurisdiction because of Plaintiffs' failure to exhaust.

IDEA offers federal funds to states in exchange for the state's commitment to furnish free appropriate public education, FAPE, [2] to children with disabilities. IDEA also establishes formal administrative procedures for resolving disputes between parents and schools concerning FAPE. The Supreme Court case on the exhaustion requirement, *Fry v. Napoleon Community Schools*, is the seminal case on the matter.[3] 580 U.S. 154, 137 S. Ct. 743, 746, 197 L. Ed. 2d 46 (2017). *Fry* resolves disputes and considers the interactions between FAPE, which requires exhaustion, and

---

[2] The Court will attempt to use descriptor words where relevant. Justice Kagan even apologies for all the acronyms of federal statutes. *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 137 S. Ct. 743, 749, 197 L. Ed. 2d 46 (2017) ("(Welcome to—and apologies for—the acronymic world of federal legislation.)"). This Court does so as well.

[3] Plaintiffs argue that Defendant's reliance on *Fry* is misplaced. (Doc. 18 at 3). Plaintiffs rely on the Seventh Circuit case of *Mosley* and indicate that claims under "IDEA may not be dismissed for a plaintiff's failure to allege that he exhausted IDEA's administrative remedies." *Mosely v. Bd. of Educ.*, 434 F.3d 527, 532–33 (7th Cir. 2006). However, the Court looks to *Fry*, decided almost a decade after *Mosely* for procedural consequences of failure to exhaust. While the Seventh Circuit has not looked at a *Fry* case after it was decided, district courts within the Seventh Circuit Court of Appeals have and each have dismissed without prejudice claims based on a failure to exhaust. *See e.g. Doe v. Twp. High Sch. Dist. 214*, No. 19-cv-3052, 2020 WL 1081726 (N.D. Ill. Mar. 6, 2020); *Doe Child by Doe v. Stark Cnty. Cmty. Unit Sch. Dist. #100*, No. 19-cv-1215-MMM, 2019 WL 6702538 (C.D. Ill. Dec. 9, 2019); *M.S. by M.S. v. Barrington Cmty. Unit Sch. Dist. 220*, No. 19-cv-5118, 2019 WL 5260757 (N.D. Ill. Oct. 17, 2019); *J.P. v. Williamson Cnty. Educ. Servs.*, No. 3:16-cv-879-NJR-DGW, 2018 WL 9651501 (S.D. Ill. Mar. 27, 2018); *J.P. v. Williamson Cnty. Educ. Servs.*, No. 316-cv-879-NJR-DGW, 2017 WL 2733882 (S.D. Ill. June 26, 2017); *Considine-Brechon v. Dixon Pub. Sch. Dist. # 170*, No. 16-cv-50133, 2017 WL 2480751 (N.D. Ill. June 8, 2017).

other federal laws such as ADA and Section 504 that aim to protect the interests of children with disabilities, but which may not require exhaustion.

The ADA and Section 504 of the Rehabilitation Act "cover people with disabilities of all ages, and do so both inside and outside of school." *Id*. at 756. Title II of the ADA, 42 U.S.C. § 12131 et seq., forbids any "public entity" from discriminating on the basis of disability and "requires a public entity to make 'reasonable modifications' to its 'policies, practices, or procedures' to avoid such discrimination. Section 504, like the IDEA, covers the disabled; it, however, "cover[s] both adults and children with disabilities, in both public schools and other settings," *Fry*, 137 S. Ct. at 749, and requires that a public entity make "reasonable modifications" to existing practices, including by offering support services, to "accommodate" disabled persons, *Alexander v. Choate*, 469 U.S. 287, 299–300, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985); *see, e.g., C.L. v. Scarsdale Union Free Sch. Dist*., 744 F.3d 826, 832 (2d Cir. 2014) (discussing support services available under section 504).

However, *Fry* held that exhaustion of IDEA's administrative remedies is unnecessary where the gravamen of plaintiff's suit is something *other* than the denial of IDEA's core guarantee of FAPE. Said differently, if the gravamen of the of the suit is IDEA core guarantee of FAPE, regardless of other statutes alleged, a plaintiff must exhaust administrative remedies.

20 U.S.C. § 1415(l) is the rule of construction provision of the IDEA which compels exhaustion when a plaintiff seeks "relief" that is available" under IDEA. It states as follows:

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act [including § 504], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].

20 U.S.C. § 1415(l). IDEA, therefore, requires an inquiry into whether a lawsuit charges such a denial of FAPE. So, a plaintiff cannot escape § 1415(l) simply by bringing suit under a statute other than IDEA. As *Fry* notes, because parents and schools sometimes cannot agree on plans and goals, IDEA establishes "formal procedures for resolving disputes." *Fry*, 137 S. Ct. at 756.

*Fry* held that a plaintiff is required to exhaust IDEA's procedural requirements "when (but only when) her suit 'seek[s] relief that is also available under the IDEA," that is, "the denial of a FAPE." *Id*. at 755. In determining whether the relief a plaintiff seeks is for the denial of a FAPE, courts must look at "substance of, rather than the labels used in, the plaintiff's complaint." *Id*. What matters is the crux—or, in legal-speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading." *Id*. at 755. This inquiry does not "ride on whether a complaint" includes or omits FAPE or IEP. *Id*. "To prove discrimination in the education context, something more than a mere failure to provide the 'free appropriate education' required by [IDEA] must be shown," *Sellers v. Sch. Bd. of City of Mannassas, Va.*, 141 F.3d 524, 529 (4th Cir. 1998); *J.S., III by & through J.S. Jr. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 985–86 (11th Cir. 2017). Plaintiffs must adequately allege discriminatory treatment outside of FAPE violations.

The Supreme Court provides courts some "clues" to district courts to determine the gravamen of the complaint by asking a pair of hypothetical questions: The first clue comes from the answers to a pair of hypothetical questions: (1) "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school?" and (2) "could an adult at the school ... have pressed essentially the same grievance?" *Id*. at 756. When the answer to each question is no, the complaint "probably does concern a FAPE." *Id*. On the other hand, if the answers are yes, a FAPE is unlikely the true subject of the complaint. *Id*. The second clue involves the history of the case; a plaintiff's previous invocation of the IDEA's formal

procedures may "provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE." *Id*. at 757.

Defendants argue that applying the hypothetical *Fry* test establish the gravamen of Plaintiffs' Complaint is of a denial of FAPE. (Doc. 16 at 5). Plaintiffs argue that the gravamen is not denial of FAPE but discrimination. (Doc. 18 at 4). Defendant answers the first question and argues Plaintiffs would not be able to bring the same claims as Plaintiffs Defendant's alleged conduct occurred at a public facility and not a school. They state the conduct – Defendant's failure to provide B.P. with notes before class per his IEP, failure to provide him with his DM system, failure to train teachers and staff on his DM, and failure to take appropriate action in response to failure to properly implement IEP – would only apply in a school environment. Plaintiffs argue that if B.P. "had gone to a movie theater, library polling place or other public facility, and was denied service and reasonable accommodations, subjected to public ridicule and humiliation based on his disability, told "*I don't care that you're deaf,*" and sent out of the facility that he would have a claim for disability discrimination under various state and federal laws that prohibit discrimination based on disability." (Doc. 18 at 4). Essentially, Plaintiffs argue that "it is clear that the gravamen of Plaintiff's Complaint is one for disability discrimination and not the denial of IDEA's core guarantee of a Free Appropriate Public Education." *Id*.

The Court answers the first question. Plaintiffs could not bring the same claim if the Defendant's conduct occurred at a public facility and not at a school. Specifically, the conduct Plaintiffs allege are that Defendants failed to provide B.P. with notes per his IEP, failed to provide with his DM system per his IEP, and Defendants failed to take appropriate action in implementation per B.P.'s IEP. These allegations would only be actionable conduct in a school setting where the public school is obligated for FAPE. The *Fry* court looked at the example of a

wheelchair bound student who sues his school under Title II of the ADA because of lack of access of ramps. *Fry*, 137 S. Ct. at 756–57. The Supreme Court asked "could [the child] file the same basic complaint if a municipal library or theater had no ramps…" *Id*. Here, even if the wheelchair bound child may have been entitled to an IEP specifying the school would provide ramps, this does not imply his ADA claim, premised on required ramp access, is subject to exhaustion. *Id*. Here, because the kind of claims are based on the IEP and not on equality of access to facilities. *Paul G. by & through Steve G. v. Monterey Peninsula Unified Sch. Dist.*, 933 F.3d 1096, 1101 (9th Cir. 2019) ("In this case, Paul could not have brought the same claims against a public facility that was not a school, nor could an adult employee or visitor present the same grievance, because the relief Paul seeks is fundamentally educational — access to a particular kind of school as required by his IEP."); *see Fry*, 137 S. Ct. at 756 (claims are based on the IEP when access is "adequacy of special education" and not "equality of access to public facilities"). The Court finds that Plaintiffs could not bring this same claim had Defendant's conduct occurred at another public facility.

Next, the Court answers whether an adult at the school pressed essentially the same grievance in the negative. Here, an adult would not be able to bring the same claims as Plaintiffs because the claims themselves deal with a failure to provide class notes and DM system, which are required accommodations in his IEP. The Court finds that the gravamen of the Complaint is access to special education and not equal access to public facilities, which an adult could not bring. Additionally, Plaintiffs' allegations that an adult would be able to sue if the school committed the same discriminatory acts characterizes the allegations too generally. *McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640, 646 (5th Cir. 2019) ("describing his lawsuit as the denial of access to the school facility characterizes it too generally"); *See Nelson v. Charles City Cmty. Sch. Dist.*, 900 F.3d 587, 592 (8th Cir. 2018) (explaining that a plaintiff answered the *Fry* questions at too

high a "level of generality" by framing the denial of a request to enroll in online learning in a different school district as a "broken promise of non-discriminatory access").

The ADA Discrimination claims in Count I, II, and III allege Defendant failed to train personnel regarding B.P.'s IEP, provide class notes, inform of B.P.'s DM system, and etc. Compl. at ¶ 78 (a)-(e). Further, Plaintiffs allege Defendant retaliated, belittled, and humiliated Plaintiff. *Id.* While the name calling, humiliation, and poor words B.P.'s teachers used are not a strict denial of use of IEP, they all stem from the same conduct from a failure to adhere to IEP.  All of B.P.'s complaints and grievances "all stem from the alleged failure to accommodate his condition and fulfill his educational needs." *Wellman v. Butler Area Sch. Dist.*, 877 F.3d 125, 133 (3d Cir. 2017). Namely, Plaintiffs main concern, as evidenced throughout the Complaint was failure to use the DM and provide notes per his IEP and therefore, B.P.'s education.

The Court does not find this case similar to another example in *Fry* where *Fry* adequately distinguishes between FAPE claim and antidiscrimination claim in school. A student sues her school under an antidiscrimination statute alleging that a teacher struck her "out of animus or frustration." *Fry*, 137 S. Ct at 756 n.9. Even assuming the student has an IEP and that striking the student could violate the IEP, the "substance" of this suit "is unlikely to involve the adequacy of special education -- and thus is unlikely to require exhaustion." *Id*. "A telling indicator of that conclusion," *Fry* explained, is that the same suit could be filed in contexts not covered by the IDEA. *Id*. That is, "a child could file the same kind of suit against an official at another public facility for inflicting such physical abuse -- as could an adult subject to similar treatment by a school official." *Id.*; *Parent/Pro. Advoc. League v. City of Springfield, Massachuset*ts, 934 F.3d 13, 26 (1st Cir. 2019). Such is not the case here.

The Court does not find the discrimination and retaliation claims Plaintiffs allege from treatment by the teacher Mr. Gray so separate from the violations of the IEP – here, the IEP violations and failure to adhere to DM by Mr. Gray and other teachers are the crux of the Complaint. While Plaintiffs attempt to fashion the response as one based in discrimination, and not in FAPE, the Court sees the claims of discrimination as a logical path from the crux of the Complaint, which is the Defendant's failure to adhere to the IEP. *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 274 (3d Cir. 2014) (finding a "logical path to be drawn from the [a]ppellants' claims of retaliation to [the appellee's] failure to provide, and [the parent's] effort to obtain," a FAPE for her son); *M.T.V. v. DeKalb Cty. Sch. Dist.*, 446 F.3d 1153, 1158–59 (11th Cir. 2006) (holding that retaliation claims "clearly relate[d]" to student's evaluation and education and were subject to the exhaustion requirement); *Rose v. Yeaw*, 214 F.3d 206, 210 (1st Cir. 2000) (holding that retaliation claims were related to the evaluation and educational placement of a student and, thus, had to be exhausted).

 "The IDEA guarantees individually tailored educational services, while ... [section] 504 promise[s] non-discriminatory access to public institutions," *Fry*, 137 S. Ct at 756, "sometimes by means of reasonable accommodations," *id*. To be sure, there is "some overlap in coverage" between the statutes. *Id*. The Court looks to answering the two "clues" the Court analyzes above. Looking at the hypotheticals, the Court still answers "no" regarding the Section 504 claim. *Cf Doucette v. Georgetown Pub. Sch.*, 936 F.3d 16, 25 (1st Cir. 2019) ("The deprivation about which the Doucettes complain (deprivation of a service animal) might occur in a public facility that is not a school, and a non-student could press essentially the same grievance.") (cleaned up). Here, the deprivation of use of DM during a school setting is not similarly situated to either the ramp

access analogy in *Fry* or the service animal example in *Douchettes*. The Court finds that Plaintiffs'
Section 504 counts require exhaustion.

This case also can also be easily distinguished from cases where courts have held plaintiff
has alleged discriminatory treatment outside of FAPE. In *Doe v. Dallas Indep. Sch. Dist.*, a student
T.W. was disabled, had an IEP, and was raped and sexually harassed repeatedly by another student.
941 F.3d 224, 227 (5th Cir. 2019). The Fifth Circuit held the student's disability and IEP was
included to give "context that the school had notice regarding T.W.'s inability to protect herself."
*Id*. The Court finds that B.P.'s inclusion of the IEP is much more than providing context, it
provides a basis for the complaint. The Court disagrees that the gravamen of Plaintiffs' Complaint
is for disability discrimination. The Supreme Court has instructed that Courts cannot let Plaintiffs
evade IDEA's exhaustion requirements through "artful pleading." *Fry*, 137 S. Ct. at 755.
Specifically, the incident with the substitute teacher is not the gravamen of the Complaint and the
Court, looking at the Complaint as a whole regarding the issues alleged views the crux of the
Complaint as a failure to adhere or abide by the IEP or use the DM system.

Here, the history of the proceedings also shows that the gravamen of B.P.'s suit seeks relief
for a denial of FAPE. As the *Fry* Court noted, "prior pursuit of the IDEA's administrative remedies
will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a
FAPE, even if the complaint never explicitly uses that term." 137 S.Ct. at 757. Here, B.P.'s parents
filed a due process complaint against the Defendant requesting an order Defendant adhere to IEP,
an order Defendant instruct all personnel to use the DM, an order Defendant use the DM and
provide class notes in accordance with IEP, and compensatory education. Under *Fry*, B.P.'s pursuit
of administrative remedies is further evidence that his complaint concerns the denial of a FAPE.
Additionally, the Court does not excuse the exhaustion where the "the move to a courtroom came

from a late-acquired awareness that the school had fulfilled its FAPE obligation and that the grievance involves something else entirely." *Fry*, 137 S. Ct. at 757.

Next, Plaintiffs argue that it filed a complaint with the Illinois State Board of Education, Special Education Department ("Board") and already participated in lengthy administrative proceedings (Doc. 18 at 2). Plaintiffs state that because B.P. was no longer a student in the Defendant's district, Board had no authority to order Defendant to comply with the IEP. *Id*. Therefore, Plaintiffs argue they have exhausted their administrative remedies and, are not required to plead exhaustion as well. Defendant responds that Plaintiffs "grossly misrepresent the basis for the dismissal of their due process complaint." (Doc. 19 at 2). The Court finds that the decision from the hearing officer regarding the administrative proceeding was not a decision on the merits.

Courts have previously held that administrative exhaustion requires "more than pleading a claim"—the administrative body must actually come to a decision. *Reyes v. Manor Indep. Sch. Dist*., 850 F.3d 251, 256 (5th Cir. 2017). Here, the hearing officer concluded that she lacked jurisdiction. So there was no decision one way or another on the sufficiency of B.P.'s FAPE. *See Paul G. by and through Steve G. v. Monterey Peninsula Unified Sch. Dist*., 933 F.3d 1096, 1102 (9th Cir. 2019) (holding that "the only way to obtain an administrative ruling on [Plaintiff's] claim that he was denied a FAPE" was through administrative exhaustion). Plaintiffs present no case holding that a dismissal for procedural difficulties[4] qualifies as administrative "findings and [a] decision." And it is hornbook law that jurisdictional rulings or procedural dismissals are not

---

[4] The Hearing Officer's decision indicates Plaintiffs' due process complaint was dismissed based on procedural deficiencies, namely (1) Plaintiffs incorrectly identified the school B.P. attended (Ex. A at 6); (2) Plaintiffs did not specify any resolution for their denial of FAPE claim (Ex. A at 6); (3) Plaintiffs alleged vague humiliation and emotional damages which the hearing officer does not have jurisdiction over (Ex. A at 7); (4) Plaintiffs improperly requested relief from the "Board of Education" rather than the IHO (Ex. A at 8); and (5) Plaintiffs improperly relied on their request "for such other and further action as the Board of Education deems proper under the circumstances" a sufficient for purposes of a proposed resolution (Ex. A at 8-9). Additionally, the hearing officer mentions IDEA authorizes an award of compensatory educational services, but notes Plaintiffs did not request such services in their complaint. (Ex. A at 9).

substantive determinations on the merits. *See generally Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). A jurisdictional dismissal does not constitute "findings and decision" for purposes of § 1415. *Heston, Next Friend of A.H v. Austin Indep. Sch. Dist.*, 816 F. App'x 977, 983 (5th Cir. 2020).

Plaintiffs ADA and Section 504 claims require exhaustion because the gravamen of the Complaint is FAPE. Regarding Plaintiffs' state IIED claim, because the Court will dismiss the federal law claims, there is no supplemental jurisdiction over the related state law claim pursuant to 28 U.S.C. § 1367(a). Therefore, considering B.P.'s complaint, including each count therein, and the history of the proceedings, we conclude that the gravamen of B.P.'s complaint is the denial of a FAPE. The Court must grant Defendant's motion and dismiss this case.

### III.    Conclusion

In sum, because B.P.'s complaint seeks relief for a denial of a FAPE, he must first exhaust IDEA's administrative remedies under § 1415(l). The Court hereby **GRANTS** Defendant's Motion to Dismiss (Doc. 16) and **DISMISSES** this case **WITHOUT PREJUDICE** for lack of jurisdiction. The Court **FINDS AS MOOT** Defendant's Motion to Stay (Doc. 22).


**IT IS SO ORDERED.**
**Dated: October 26, 2022**

**/s/ J. Phil Gilbert**
**J. PHIL GILBERT**
**DISTRICT JUDGE**